**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANDREW MERTON WILLIAMS,

                Plaintiff,

v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

No. 3:17-CV-00383
(CFH)

---

**APPEARANCES:**

Olinsky Law Group
300 South State Street,
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.
EDWARD A. WICKLUND, ESQ.

JASON P. PECK, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

    Plaintiff Andrew Merton Williams brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying his application for disability insurance benefits. Dkt. No. 1 ("Compl.").[1] Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 15, 16. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born on December 15, 1971. T. 179.[2] Plaintiff has a "limited education," and completed tenth grade. Id. at 201. Plaintiff's only full-time job in the past fifteen years was as a food service maintenance worker at McDonald's, where he engaged in tasks such as cleaning cooling equipment, unloading trucks, and fixing appliances. Id. at 76-77, 193, 201. At McDonald's, plaintiff was on his feet for most of the work shift. Id. at 77. He regularly lifted objects weighing fifty pounds, and had to stop unloading trucks because it bothered his neck. Id. Plaintiff ceased employment at McDonald's at the alleged disability onset date. Id. At the oral hearing, plaintiff testified that he is 6'1'' tall and weighs 280 pounds. Id. at 92. He lives with his wife and four children, two of whom live there part-time. Id. at 76. Plaintiff generally stays at home in his recliner, which he described as his "best spot to sit." Id. at 81. He attempts to do simple chores, and his children help him with the laundry. Id. at 84. Plaintiff can do the dishes, but needs to move and change positions to keep comfortable. Id. at 81. Plaintiff averages about ten "bad

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 6.

[2] The page numbers following Dkt. No. 8 refer to the pagination of the header numbers generated by CM/ECF, not the pagination in the administrative transcript. References to the administrative transcript will be referred to as T., followed by the page number.

days" a month, and spends a majority of his days in his recliner or in bed. Id. at 83, 94. He is able to care for his personal hygiene, and a higher toilet and a shower stall were installed in his home to alleviate pain in his knee. Id. at 84. Plaintiff is able to drive with the help of a "pillow or a sweatshirt" on the side of his left leg "so it will not rest on the door." Id. at 87.

On November 19, 2013, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. T. 179-89. Plaintiff alleged disability beginning on August 14, 2013. Id. at 179. Plaintiff's application was initially denied on January 2, 2014. Id. at 106-110. Plaintiff requested a hearing, and a hearing was held on June 19, 2015 before Administrative Law Judge ("ALJ") Bruce S. Fein. Id. at 71-97, 115-16. ALJ Fein determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from August 14, 2013 through the date of this decision." Id. at 53. The Appeals Council denied plaintiff's request for review, id. at 48, making the ALJ's findings the final determination of the Commissioner. Id. at 6-13. Plaintiff commenced this action on April 6, 2017. See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not

applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any

4

substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037) (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 14, 2013, the alleged disability onset date. T. 54. The ALJ found at step two that plaintiff had the severe impairments of "left knee osteoarthritis-status post multiple left knee surgeries," bilateral plantar fasciitis, and degenerative disc disease of the lumbar spine. Id. at 55. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 56. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a), because the claimant is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six

>> hours in an eight-hour workday. Although the claimant cannot kneel, crouch, and climb ladders, ropes, and scaffolds, he is able to frequently balance and stoop.

Id.

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. T. 60. At step five, relying on the Grids, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that claimant can perform. Id. at 61. Thus, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from August 14, 2013 through the date of this decision." Id. at 62.

### D. Arguments

Plaintiff argues that the "ALJ's RFC determination is unsupported by substantial evidence and is the product of legal error as he failed to properly evaluate the opinion of [p]laintiff's treating orthopaedic surgeon, Dr. Cicoria." Dkt. No. 15 at 3. Conversely, the Commissioner argues that "substantial evidence supports the ALJ's evaluation of Dr. Cicoria's medical assessment of [p]laintiff's ability to sit and no vocational expert testimony was required." Dkt. No. 16 at 8.

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past

relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2); see Halloran, 362 F.3d at 32. If the ALJ declines to give controlling weight to a treating physician's opinion, the ALJ is required to assess the following factors in determining the weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). If substantial evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e).

The Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating

8

physician's opinion." Halloran, 362 F.3d at 33; Brogan-Dawley v. Astrue, 484 F. App'x. 632, 633 (2d Cir. 2012) (summary order). However, "where the evidence of record permits [the Court] to glean the rationale of an ALJ's decision," the ALJ need not "have mentioned every item of testimony presented to him [or her] or have explained why he [or she] considered particular evidence unpersuasive or insufficient to lead him [or her] to a conclusion of disability." Petrie v. Astrue, 412 F. App'x. 401, 407 (2d Cir. 2011) (summary order).

> The ALJ determined that plaintiff retained the RFC
>
>> to perform sedentary work . . . because [plaintiff] is able to life and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although [plaintiff] cannot kneel, crouch, and climb ladders, ropes, and scaffolds, he is able to frequently balance and stoop.

T. 56. Sedentary work is defined as:

> [I]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

The crux of plaintiff's argument rests on a series of reports that appear to have been filled out, at least in part, by plaintiff's treating physician, Dr. Cicoria. See T. 456-70. On June 3, 2014, Dr. Cicoria asserted that plaintiff could stand for one hour per day; sit for two hours per day; drive for two hours per day; and walk for one hour per day, with breaks. Id. at 464. He further stated that plaintiff has the work capacity to perform sedentary work,

9

which includes "occasional lifting 0-10 lbs. maximum." Id. Dr. Cicoria affirmed that plaintiff could use both his left and right hands for repetitive movement. Id. In insurance reports dated March 31, 2015 and October 30, 2014, Dr. Cicoria opined that plaintiff did not have the capacity to work in any occupation. Id. at 456, 460. An undated form entitled "Supplemental Claimant Statement," which appears to be an insurance form, notes that plaintiff spends a "majority" of his day "sitting with leg up." Id. at 467.

In explaining his RFC determination, the ALJ detailed Dr. Cicoria's medical opinions from these reports, and concluded that, "[d]espite the claimant's extensive history of treatment with a variety of practitioners, there are no opinions in the record that support the allegations of disabling work-related functional limitations." T. 59.[3] The ALJ gave "significant weight to the specific functional assessments of Dr. Cicoria due to his expertise, his long treating relationship with the claimant, and the relative consistency of his specific functional assessments with the overall evidence, including the claimant's activities of daily living." Id. at 60. Acknowledging that Dr. Cicoria "indicated that the claimant is able to sit for two hours in a workday," the ALJ referenced the "Supplemental Claimant Statement," a "report[ ] completed for insurance companies," which mentions that plaintiff spends the "majority" of his day sitting. Id. at 59-60.

Plaintiff argues that the ALJ relied upon "faulty" and "bogus" reasoning in failing to address Dr. Cicoria's limitation that plaintiff required elevation of his left leg. Dkt. No. 15 at 16. The Court disagrees. As the Commissioner argues, absent from the administrative

---

[3] Although the ALJ acknowledged that plaintiff testified that he could not keep his leg at a ninety degree angle, T. 58, plaintiff's attorney noted that, in the hearing, plaintiff sat with his left knee extended. Id. at 90.

10

transcript is any record establishing that Dr. Cicoria, or any medical professional, concluded that plaintiff must elevate his leg while seated. See Dkt. No. 16 at 9. The assertion that plaintiff spends a "majority" of the day "sitting with [his] leg up" appears to have been based on plaintiff's "subjective self-reporting" as either plaintiff filled out this form himself, or the form was completed based on plaintiff's reports.[4] See Andrews v. Comm. of Soc. Sec., No. 16 Civ. 6867 (KMK)(JCM), 2017 WL 6398716, at *12 (S.D.N.Y. Oct. 24, 2017) (noting that the restrictions imposed by the plaintiff's doctor were based primarily on the plaintiff's "subjective self-reporting," rather than the doctor's direct observation); T. 467. It is reasonable for the ALJ to determine that the information provided in the Supplemental Claimant Statement was based on plaintiff's own assertions, rather than Dr. Cicoria's medical judgment because the form directed plaintiff to complete the section himself. Id. at 467. Further, Dr. Cicoria's own assessment setting forth limitations, although suggesting a two-hour sitting maximum, makes no mention of leg elevation. Id. at 464. Although it has been held that "reliance on a patient's subjective complaints is not a valid reason to reject a medical opinion," the ALJ did not decline to adopt Dr. Cicoria's entire medical opinion, rather the assessment contained in the Supplemental Claimant Statement, which he found against the weight of other substantial medical evidence in the record. Shaffer v. Berryhill, No. 16-CV-874-FPG, 2017 WL 6047816, at 3 n.6 (W.D.N.Y. Dec. 7, 2017); see Wilburn v. Colvin, No. 1:15-CV-00058 (DNH/TWD), 2016 WL 1237789, at *6 (N.D.N.Y. Feb. 29, 2016) ("Notably, it is within the ALJ's 'province' in resolving the evidence to accept parts of a doctor's opinion and to reject others.") (citing Veino v. Barnhart, 312 F.3d 578, 588-89 (2d

---

[4] The "Supplemental Claimant Statement" includes the instruction that "[c]laimant should answer all questions below," and indicates that physicians should complete the reverse side. T. 467.

Cir. 2002)).

Moreover, there is no indication that the ALJ improperly substituted his own opinion for that of Dr. Cicoria as the ALJ gave Dr. Cicoria's specific functional assessments "significant weight," absent the limitations the ALJ felt conflicted with other substantial evidence in the record, including Dr. Cicoria's failure to explain "how the claimant's knee condition or other impairments may limit the ability to sit" in contrast to plaintiff's testimony that he spent a majority of the day sitting in his recliner. T. 60; see Mahon v. Colvin, No. 15-CV-398-FPG, 2016 WL 3681466, at *4 (W.D.N.Y. July 6, 2016) (noting that the doctor's "medical opinion must [ ] be given appropriate weight according to the factors listed in [the regulation]."); Schlichting v. Astrue, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) ("It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.") (internal quotation marks and citation omitted). Thus, plaintiff's contention that the ALJ failed to evaluate properly Dr. Cicoria's medical opinion is without force, as the medical evidence in the record does not demonstrate that plaintiff must have his leg elevated while sitting.

The plaintiff bears the burden of producing evidence to establish any functional limitations that would prevent him or her from engaging in substantial gainful activity. See 20 C.F.R. § 416.929(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); McCarthy v. Colvin, No. 3:16 CV 1716 (JGM), 2018 WL 495678, at *12 (D. Conn. Jan. 22, 2018) ("[T]he claimant has the burden to demonstrate functional limitations precluding any substantial gainful activity."). The ALJ properly determined that plaintiff failed to meet his burden. T. 60 ("Despite evidence of significant orthopedic impairments, the claimant and his

representative have not met their burden to support the allegations of an inability to engage in sedentary work."). The administrative record fails to establish that Dr. Cicoria, or any other medical provider, concluded that plaintiff must keep his left leg elevated while seated. As it was plaintiff's burden to produce evidence of limitations precluding him from substantial gainful activity on a regular and continuing basis, the ALJ was not required to read into Dr. Cicoria's medical opinion a specific limitation that was not expressly stated. See Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); McCarthy, 2018 WL 495678, at *12 ("Given the claimant's burden of proof at this step of the analysis, the ALJ is not required to address whatever plaintiff claims was 'implied' by the doctor's characterizations.") (citing Barry, 606 F. App'x at 622). Although an ALJ has a duty to develop the medical record where gaps exist, and, if the circumstances provide, recontact a physician to obtain clarity,[5] Brogan-Dawley, 484 F. App'x at 634; see 20 C.F.R. § 404.1512(b)(1), "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir.1996)).

Here, plaintiff's failure to produce medical evidence supporting a conclusion that his leg must be elevated does not amount to an "obvious gap" in the record that would warrant

---

[5] Plaintiff does not argue that the ALJ was required to recontact the treating physician or obtain other medical evidence. See generally Dkt. No. 15.

the ALJ to recontact the treating physician as there is no indication that the ALJ lacked plaintiff's complete medical history. See Rosa, 168 F.3d at 79 n.5; T. 52-62. Moreover, as discussed below, the record, both in medical evidence and in plaintiff's reports of his daily activities, provides sufficient evidence for the ALJ to fully assess plaintiff's RFC and ability to perform substantial gainful activity. See Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order) (concluding that there were no obvious gaps in the record to warrant remand where the plaintiff did not "contend that the ALJ lacked her complete medical history, and the administrative record was 'adequate for [the ALJ] to make a determination as to disability.'") (citing Perez, 77 F.3d at 48). Thus, the Court finds there was no duty to recontact the treating physician. Consequently, the Court finds that plaintiff failed produce evidence of limitations precluding him from substantial gainful activity on a regular and continuing basis.

Insofar as plaintiff contends that remand is necessary because, in rejecting Dr. Cicoria's opinion, the ALJ "point[ed] to no other medical experience evidence to the contrary," Dkt. No. 15 at 17, it is well-settled that the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (citation omitted). Therefore, because the ALJ is "entitled to weigh all of the evidence available" in determining a claimant's RFC, the ALJ's failure to cite other medical opinions in support of his RFC was not reversible error. Id.

To the extent that the ALJ declined to adopt Dr. Cicoria's assessment that plaintiff

14

can only sit for two hours in an eight-hour work day,[6] this conclusion does not amount to reversible error. "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." Gecevic v. Sec'y of Health & Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (quoting Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983)). Conversely, "[t]here is no absolute bar to crediting only portions of medical source opinions." Younes v. Colvin, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently." Id.

Here, the ALJ acknowledged the discrepancy between Dr. Cicoria's findings that plaintiff could only sit for two hours and the ALJ's RFC determination that plaintiff had the RFC to sit for six hours. T. 60. The ALJ credited the "Supplemental Claimant Statement," which provides that plaintiff sits for a majority of the day, as his rationale for declining to fully adopt Dr. Cicoria's medical opinion. Id. Thus, the ALJ adequately explained the discrepancy between his RFC assessment and Dr. Cicoria's medical opinion. See Dioguardi v. Comm. of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (noting that an ALJ must explain why she declined to adopt a treating physician's opinion when the ALJ's RFC assessment conflicts with that doctor's medical opinion); cf. Searles v. Astrue, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) (remanding where "the

---

[6] Plaintiff does not argue, separate from his contention that the ALJ erred in failing to consider the leg elevation comment in the Supplemental Claimant Statement, that the ALJ erred in failing to adopt Dr. Cicoria's conclusion that plaintiff could sit only for two hours. See Dkt. No. 15 at 16.

15

ALJ failed to explain why he ignored portions of an opinion for which he granted 'significant weight.'"). Although it has been held that "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," House v. Astrue, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted), the ALJ's decision makes clear the medical evidence he relied on in making his RFC determination. See T. 56-60 (setting forth the ALJ's assessment of plaintiff's "extensive" medical history). Moreover, "the regulations provide that the ALJ must assess the claimant's RFC 'based on all the relevant evidence in [the] case record,' not based solely on the medical evidence." Charbonneau v. Astrue, No. 2:11-CV-9, 2012 WL 287561, at *10 (D. Vt. Jan. 31, 2012) (quoting 20 C.F.R. § 404.1545(a)(1)). As discussed below, the Court finds that the ALJ's decision is based on the entirety of the case record, and, thus, is supported by substantial evidence. See subsection II.D supra, at 16-17.

      Even if the Court had concluded that the ALJ's failure to adopt Dr. Cicoria's entire medical opinion in reaching his RFC amounted to legal error, such error is harmless as the ALJ's ultimate conclusion is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). In determining a claimant's RFC, the regulations allow an ALJ to consider "factors relevant to [his or her] symptoms," including the claimant's daily activities. 20 C.F.R. § 416.929(c)(3)(i). Although plaintiff "should not be punished for continuing to perform daily activities in spite of [his] pain," Crocco v. Berryhill, No. 15-CV-6308 (MKB), 2017 WL 1097082 (E.D.N.Y. Mar. 23, 2017), the ALJ properly considered plaintiff's claims

of disabling pain and limitations against his testimony at the June 19, 2016 hearing regarding his reported activities of daily living. T. 57. Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31. A reasonable mind could infer from plaintiff's testimony about his activities of daily living, and the medical evidence, that plaintiff could perform sedentary work requiring six hours of sitting. See Halloran, 362 F.3d at 31; T. 56. Although Dr. Cicoria's medical assessment limited plaintiff to only two hours of sitting per day, T. 464, plaintiff testified that he spends much longer than that — a "majority" of his day — sitting in his recliner. Id. at 81, 83, 94, 467. Plaintiff testified that he "occasionally" cooks, and does some of the housework, including the dishes. Id. at 94. He also testified that he drives, and, although he expressed some difficulty or limitations while doing so, he hunted with his friends "four or five times" in May 2015. Id. at 87-88. Thus, the ALJ's decision to weigh plaintiff's testimony against his "extensive history of treatment with a variety of practitioners" and determine that "no opinions in the record [ ]support[ed] the allegations of disabling work-related functional limitations" was based on substantial evidence. Id. at 59. Therefore, the ALJ's determination that plaintiff retained the RFC to perform sedentary work was adequately supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Halloran, 362 F.3d at 31. Accordingly, the Commissioner's decision is affirmed.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff Andrew Merton Williams's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 16, 2018
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge